**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **DIEGO ORDOÑEZ,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | |
| § | |
| **POLARIS INDUSTRIES, INC.,** § | |
| **POLARIS ACCEPTANCE, INC.,** § | |
| **POLARIS SALES, INC., THE POWER** § | |
| **CENTER, INC., LOGSTON &** § | **CIVIL ACTION NO.** _____ |
| **LOGSTON, INC. d/b/a SANTA** § | |
| **TERESA MOTORSPORTS, and** § | |
| **INDIANA MILLS &** § | |
| **MANUFACTURING INC.,** § | |
| § | |
| **Defendants.** § | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and D.N.M. LR-CV. 81.1, Defendants Polaris

Industries, Inc., Polaris Acceptance, Inc., and Polaris Sales, Inc. (the "Polaris Defendants"), file

this Notice of Removal of Case No. D-101-CV-2025-00265, from the First Judicial District Court

of Santa Fe County, New Mexico ("New Mexico State Court"), where this action was commenced,

to this Court. As grounds for removal, Defendants state as follows:

### I.    STATEMENT OF THE CASE

1.    On January 30, 2025, Plaintiff Diego Ordoñez, filed "Plaintiff's Original Complaint

for Personal Injuries" in New Mexico State Court, Case No. D-101-CV-2025-00265, styled *Diego*

*Ordoñez v. Polaris Industries, Inc., Polaris Acceptance, Inc., Polaris Sales, Inc., The Power*

*Center, Inc., Logston & Logston, Inc. d/b/a Santa Teresa Motorsports, and Indiana Mills &*

*Manufacturing Inc.* ("State Court Action").

1

2.      A copy of the Complaint is attached as **Exhibit A**. Plaintiff alleges personal injuries caused by a vehicle accident and asserts tort claims against Defendants under New Mexico state law.

## II.      GROUNDS FOR REMOVAL

**A.      Diversity Jurisdiction Under 28 U.S.C. § 1332**

3.      Defendants are entitled to remove the State Court Action to this Court because it is a civil action involving completely diverse parties and an amount in controversy that exceeds $75,000.00. 28 U.S.C. §§ 1332, 1441(a).

4.      Plaintiff Diego Ordoñez is a citizen of the state of Texas. Compl., ¶ 1.

5.      Defendant Polaris Industries, Inc., is a corporation organized under the laws of the state of Delaware, with its principal place of business in Minnesota. Thus, Polaris Industries is a citizen of Delaware and Minnesota for diversity jurisdiction purposes. *Id.*, ¶ 2.[1]

6.      Defendant Polaris Acceptance is a corporation organized under the laws of the state of Minnesota, with its principal place of business in Minnesota. Thus, Polaris Acceptance is a citizen of Minnesota for diversity jurisdiction purposes. *Id.*, ¶ 5.

7.      Defendant Polaris Sales, Inc., is a corporation organized under the laws of the state of Minnesota, with its principal place of business in Minnesota. Thus, Polaris Sales is a citizen of Minnesota for diversity jurisdiction purposes. *Id.*, ¶ 8.

8.      Defendant Power Center is a corporation organized and existing under the laws of the state of New Mexico, with its principal place of business in New Mexico. Thus, Power Center is a citizen of New Mexico for diversity jurisdiction purposes. *Id.*, ¶ 13.

---

[1] Plaintiff incorrectly alleges that Polaris Industries is incorporated under the laws of the state of Minnesota.

4673947v1

9.    Defendant Logston is a corporation organized and existing under the laws of the state of New Mexico, with its principal place of business in New Mexico. Thus, Logston is a citizen of New Mexico for diversity jurisdiction purposes. *Id.*, ¶ 16.

10.    Defendant Indiana Mills & Manufacturing ("IMMI") is a corporation incorporated and existing under the laws of the state of Indiana, with its principal place of business in Indiana. Thus, IMMI is a citizen of Indiana for diversity jurisdiction purposes. *Id.*, ¶ 20.

11.    No change of citizenship has occurred since commencement of this lawsuit. Accordingly, diversity of citizenship exists.

12.    Plaintiff's Complaint does not specify a numerical value for their alleged damages or a jurisdictional amount. However, "[w]hen a complaint does not state a specific amount in controversy, a defendant's notice of removal may do so." *Buscema v. Wal-Mart Stores E. LP*, 485 F. Supp. 3d 1319, 1328 (D.N.M. 2020). A "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Courts may look to the substance and nature of the alleged injuries and damages described in the pleadings to ascertain the amount in controversy. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) ("A complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal").

13.    According to the Complaint, Plaintiff was a passenger in a 2019 Polaris Ranger UTV ("UTV") on May 29, 2023 on a public street in El Paso, Texas. Compl., ¶ 28. Plaintiff alleges that the driver of the UTV lost control of the UTV causing it to rollover and slide on its left side resulting in Plaintiff's right arm getting caught between the UTV's frame and the pavement. *Id.*,

4673947v1

¶¶ 34, 39. Plaintiff alleges that his dominant arm was crushed and subsequently amputated as a result of the incident. *Id.*, ¶¶ 39-40.

14.     Plaintiff asserts state law tort claims against Defendants sounding in product liability, negligence, strict products liability, and breach of warranty. *Id.*, ¶¶ 41-114. Plaintiff requests "judgment against Defendants for all relief requested, including pre-judgment interest, costs of this suit, compensatory damages, punitive damages, and for such other and further relief as Plaintiff may show himself to be justly entitled under New Mexico law. *Id.*, p. 22

15.     In light of allegations describing extensive physical injuries, permanent impairment, and claims for damages including punitive damages, Plaintiff's Complaint plausibly establishes that the total amount in controversy exceeds $75,000.00. *See, e.g., Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (upholding removal where complaint sought recovery for "alleged damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation," *etc.*).

### III.     SATISFACTION OF ALL PROCEDURAL REQUIREMENTS FOR REMOVAL

**A.     Timely Filing**

16.     This Notice of Removal is timely because it has been filed within 30 days of the Polaris Defendants' receipt of Plaintiff's Complaint,[2] and within one year of the commencement of the State Court Action. 28 U.S.C. § 1446(b)-(c).

**B.     Venue**

17.     Venue is proper in this Court because the United States District Court for the District of New Mexico embraces the New Mexico State Court where the State Court Action was originally filed. 28 U.S.C. §§ 1441(a), 1446(a).

---

[2] The Polaris Defendants have not been served with process.

**C.      Notice**

18.      The Polaris Defendants will promptly give written notice of the filing of this Notice of Removal to all parties of record pursuant to 28 U.S.C. § 1446(d).  Also, as required by 28 U.S.C. § 1446(d), a copy of this Notice will also be filed with the New Mexico State Court.

**D.      Consent to Removal**

19.      At the time of filing of this removal, none of the Defendants have been properly served; therefore, their consent is not required pursuant to 28 U.S.C. § 1446(b)(2)(A).

**E.      Exhibits to Notice of Removal**

20.      Attached as Exhibit A is a copy of the Complaint obtained from the New Mexico State Court's online docket in the State Court Action.

21.      As permitted by D.N.M. LR-Civ. 81.1, the Polaris Defendants will file with the Clerk legible copies of all records and proceedings from the State Court Action, if any, within 28 days after filing this Notice of Removal.

### III.      CONCLUSION

By this Notice of Removal, the Polaris Defendants do not waive any objections they may have as to service, jurisdiction or venue, or any other defenses or objections they may have to this action. Defendants intend no admission of fact, law, or liability by this Notice, and expressly reserves all defenses, motions, and/or pleas that may be available to them.

WHEREFORE, pursuant to the statutes cited herein and in conformity with the requirements set forth in 28 U.S.C. § 1446, the Polaris Defendants remove this action from the New Mexico State Court to this Court.

Dated:  January 31, 2025

Respectfully submitted,

By: /s/ Jeffrey R. Taylor
　　　　Jeffrey R. Taylor

5

4673947v1

201 Third Street NW, Suite 2200
Albuquerque, New Mexico 87102
RTaylor@rodey.com
Telephone: (505) 765-7232
Facsimile: (505) 768-7395

&

David T. McDowell*
McDowell Hetherington LLP
1001 Fannin, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
Email: david.mcdowell@mhllp.com

&

Kade A. Rhodes*
McDowell Hetherington LLP
1000 Ballpark Way, Suite 209
Arlington, Texas 76011
Telephone: (817) 203-7617
Facsimile: (817) 635-7308
Email: Kade.rhodes@mhllp.com

*Pro hac vice applications forthcoming*

*Attorneys for Polaris Industries Inc., Polaris Acceptance, Inc., and Polaris Sales, Inc.*

6

4673947v1

## CERTIFICATE OF SERVICE

I hereby certify that on  January 31, 2025, a true and correct copy of the foregoing has been served on the following parties through their registered agent or counsel of record by certified mail, return receipt requested:

Joseph G. Isaac
Mendez Isaac Joudi, PLLC
320 Texas Ave., Suite 300
El Paso, Texas 79901
Tel.: (915) 444-1000
JIsaac@mijlawfirm.com

**ATTORNEY FOR PLAINTIFF**

    /s/ *Jeffrey R. Taylor*
    Jeffrey R. Taylor

4673947v1

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/30/2025 3:23 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leah D Herrera

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

DIEGO ORDOÑEZ,

  *Plaintiff,*

v.             Cause No.: D-101-CV-2025-00265

             Case assigned to Biedscheid, Bryan

POLARIS INDUSTRIES, INC.,
POLARIS ACCEPTANCE, INC.,
POLARIS SALES, INC.,
THE POWER CENTER, INC.,
LOGSTON & LOGSTON, INC.
d/b/a SANTA TERESA MOTORSPORTS,
and INDIANA MILLS &
MANUFACTURING INC,

  *Defendants.*

## PLAINTIFF'S ORIGINAL COMPLAINT FOR PERSONAL INJURIES

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Diego Ordoñez (hereinafter referred to as "Plaintiff"), by and through his counsel of record (Joseph G. Isaac and Mendez Isaac Joudi, PLLC), complaining of Polaris Industries, Inc. (hereinafter referred to as "Defendant Polaris Industries"), Polaris Acceptance, Inc. (hereinafter referred to as "Defendant Polaris Acceptance"), Polaris Sales, Inc. (hereinafter referred to as "Defendant Polaris Sales") (hereinafter jointly referred to as the "Polaris Defendants"), The Power Center, Inc. (hereinafter referred to as "Defendant Power Center"), Logston & Logston, Inc. d/b/a Santa Teresa Motorsports (hereinafter referred to as "Defendant Logston") and Indiana Mills & Manufacturing Inc (hereinafter referred to as "Defendant IMMI"), and for a cause of action would respectfully show this Honorable Court and/or Jury as follows:

### I.  PARTIES, JURISDICTION & VENUE

1.  Plaintiff is a resident of El Paso County, Texas.

Page **1** of **22**

Exhibit A to [1] Notice of Removal, 25cv100

2.    Defendant Polaris Industries is a foreign corporation incorporated in the State of Minnesota and maintains its principal place of business in Medina, Minnesota. Defendant is engaged in business and interstate commerce in New Mexico by selling and distributing its products in New Mexico, including the sale of the utility terrain vehicle ("UTV") involved in the incident, and by doing business with Defendant Logston and/or Defendant Power Center.

3.    Upon information and belief, at all times relevant to this action, Defendant Polaris Industries designed, manufactured, and/or marketed the UTV involved in the subject incident and sold, distributed, and/or otherwise placed it into the stream of commerce for purchase or use by consumers and users in New Mexico.

4.    Defendant Polaris Industries may be served with process through its registered agent, Corporation Service Co. at 125 Lincoln Avenue, Suite 223, Santa Fe, New Mexico 87501 and/or wherever it may be found.

5.    Defendant Polaris Acceptance is a foreign corporation incorporated in the State of Minnesota and maintains its principal place of business in Medina, Minnesota. Defendant is engaged in business and interstate commerce in New Mexico by selling and distributing its products in New Mexico, including the sale of the utility terrain vehicle ("UTV") involved in the incident, and by doing business with Defendant Logston and/or Defendant Power Center.

6.    Upon information and belief, at all times relevant to this action, Defendant Polaris Acceptance designed, manufactured, and/or marketed the UTV involved in the subject incident and sold, distributed, and/or otherwise placed it into the stream of commerce for purchase or use by consumers and users in New Mexico.

7.    Defendant Polaris Acceptance may be served with process through its registered agent, CT Corporation System at 206 South Coronado Avenue, Española, New Mexico 87532 and/or

Exhibit A to [1] Notice of Removal, 25cv100

wherever it may be found.

8.     Defendant Polaris Sales is a foreign corporation incorporated in the State of Minnesota and maintains its principal place of business in Medina, Minnesota. Defendant is engaged in business and interstate commerce in New Mexico by selling and distributing its products in New Mexico, including the sale of the utility terrain vehicle ("UTV") involved in the subject incident, and by doing business with Defendant Logston and/or Defendant Power Center.

9.     Upon information and belief, at all times relevant to this action, Defendant Polaris Sales designed, manufactured, and/or marketed the UTV involved in the subject incident and sold, distributed, and/or otherwise placed it into the stream of commerce for purchase or use by consumers and users in New Mexico.

10.     Defendant Polaris Sales may be served with process through its registered agent, CT Corporation System at 206 South Coronado Avenue, Española, New Mexico 87532 and/or wherever it may be found.

11.     This Court has personal jurisdiction over Defendants Polaris Industries, Polaris Acceptance and Polaris Sales (collectively the "Polaris Defendants") because they have purposefully availed themselves of the benefits and privileges of conducting business in the State of New Mexico. The Polaris Defendants have purposefully sought out the New Mexico consumer market and the benefits of doing business in New Mexico, and they have purposefully sought a benefit, advantage or profit by virtue of their activities in New Mexico. The Polaris Defendants purposefully design, manufacture, market, sell, distribute, and/or otherwise place into the stream of commerce products available for purchase and use in New Mexico. It was foreseeable to the Polaris Defendants that the design, manufacturing, marketing, sale, and/or distribution of their products in New Mexico would lead to the sale of those products in New Mexico, and that the use of those products sold in

Exhibit A to [1] Notice of Removal, 25cv100

New Mexico may result in injuries to users of those products. Thus, it was foreseeable to the Polaris Defendants that their purposeful availment of the New Mexico marketplace could lead to a lawsuit in New Mexico arising out of the sale and/or use of their products. The occurrence of the accident that gives rise to this action against the Polaris Defendants was not the result of random, fortuitous, or attenuated contacts with New Mexico. The Polaris Defendants are being hauled into court in New Mexico as a direct and foreseeable result of their efforts to avail themselves of the benefits and privileges of conducting business and selling products in New Mexico. The exercise of jurisdiction over the Polaris Defendants is fully consonant with principles of due process and a finding of specific jurisdiction over them does not offend traditional notions of fair play and substantial justice.

12.     This Court has personal and subject matter jurisdiction as to Plaintiff's claims against the Polaris Defendants.

13.     Defendant Power Center is a domestic corporation incorporated in the State of New Mexico and maintains its principal place of business in Las Cruces, New Mexico. Upon information and belief, at all times relevant to this action, Defendant Power Center sold, serviced, repaired, and/or maintained the UTV in question and associated parts through the stream of commerce for purchase and use by consumers.

14.     Defendant Power Center may be served with process though its registered agent, Brett Baker at 5518 Redfox Road, Las Cruces, New Mexico 88007 and/or wherever it may be found.

15.     This Court has personal and subject matter jurisdiction as to Plaintiff's claims against Defendant Power Center.

16.     Defendant Logston is a domestic corporation incorporated in the State of New Mexico and maintains its principal place of business in Las Cruces, New Mexico. At all times relevant to this

Exhibit A to [1] Notice of Removal, 25cv100

action, Defendant Logston serviced, repaired, and/or maintained the UTV in question.

17.    Defendant Logston may be served with process though its registered agent, Dick Patton at 2125 South Valley Drive, Las Cruces, New Mexico 88005 and/or wherever it may be found.

18.    This Court has personal and subject matter jurisdiction as to Plaintiff's claims against Defendant Logston.

19.    This Court has general jurisdiction over Defendants Power Center and Logston because they are "at home" in New Mexico and the exercise of personal jurisdiction over them is fair and fully comports with constitutional due process.

20.    Defendant IMMI is a foreign corporation incorporated in the State of Indiana with its principal place of business in Westfield, Indiana and is engaged in transacting business in New Mexico, including selling and distributing its products in New Mexico, including the design, manufacturing, marketing, and/or sale of seatbelts and other components to the Polaris Defendants for the UTV in question.

21.    Upon information and belief, Defendant IMMI derives substantial economic profits from its business activities in New Mexico.

22.    Defendant IMMI may be served with process by serving its registered agent, CT Corporation System at 334 North Senate Avenue, Indianapolis, Indiana 46204 and/or wherever it may be found.

23.    This Court has personal jurisdiction over Defendant IMMI because it has purposefully availed itself of the benefits and privileges of conducting business in the State of New Mexico. Defendant IMMI has purposefully sought out the New Mexico consumer market and the benefits of doing business in New Mexico, and they have purposefully sought a benefit, advantage or profit by virtue of their activities in New Mexico. Defendant IMMI purposefully designs, manufactures,

Page **5** of **22**

Exhibit A to [1] Notice of Removal, 25cv100

markets, sells, distributes, and/or otherwise places into the stream of commerce products for purchase or use in New Mexico. It was foreseeable to Defendant IMMI that the design, manufacturing, marketing, sale, and/or distribution of their products in New Mexico would lead to the sale of those products in New Mexico, and that the use of those products sold in New Mexico may result in injuries to users of those products. Thus, it was foreseeable to Defendant IMMI that its purposeful availment of the New Mexico marketplace could lead to a lawsuit in New Mexico arising out of the use and/or sale of its products. The occurrence of the accident that gives rise to this action against Defendant IMMI was not the result of random, fortuitous, or attenuated contacts with New Mexico. Defendant IMMI is being hauled into court in New Mexico as a direct and foreseeable result of its efforts to avail itself of the benefits and privileges of conducting business in New Mexico. The exercise of jurisdiction over Defendant IMMI is fully consonant with principles of due process and a finding of specific jurisdiction over it does not offend traditional notions of fair play and substantial justice.

24.     This Court has personal and subject matter jurisdiction as to Plaintiff's claims against Defendant IMMI.

25.     If it is later discovered throughout the course of litigation that any of the listed Defendants are not a real party in interest, Plaintiff reserves his right to ratify the name of these defendants pursuant to 1-017(A)-NMRA.

26.     Pursuant to 38-3-1-NMSA venue is proper in Santa Fe County.

## II.     STATEMENT OF FACTS

27.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

28.     The injuries and damages which are the basis of this action arise from a rollover accident involving a 2019 Polaris Ranger UTV (VIN: 4XARB994K8900521) on or about May 29, 2023,

Exhibit A to [1] Notice of Removal, 25cv100

on a public street at the intersection of County Club Road and Vista Del Monte Street in El Paso County, Texas.

29.    The Polaris Defendants are in the business of designing, engineering, developing, manufacturing, testing, furnishing, marketing, distributing and/or selling UTVs.

30.    Upon information and belief, The Polaris Defendants use Defendant Power Center as a dealer, distributor, and/or representative in New Mexico to market, sell, distribute, provide, repair, and/or service, to further their joint enterprise business relationship, in promoting, marketing and selling Polaris UTVs.

31.    The Polaris Ranger UTV was in an unreasonably dangerous condition as designed, manufactured, marketed, assembled, distributed, and/or placed into the stream of commerce by the Polaris Defendants and/or Defendant Power Center, and was a producing cause of the occurrence and injuries made the basis of this suit.

32.    Upon information and belief, the UTV in question was sold, serviced, and/or maintained at Defendant Power Center's retail store in Las Cruces, New Mexico.

33.    Upon further information and belief, the UTV in question was also repaired, serviced, and or maintained at Defendant Logston's location in Santa Teresa, New Mexico.

34.    Upon further information and belief, on or about May 29, 2023, the UTV's owner was driving Plaintiff and another passenger northbound on Vista Del Monte Street in El Paso, Texas. As the driver approached the intersection with County Club Road, he lost control of the UTV causing it veer to the left into a side slide with the passenger side leading. The UTV rolled and flipped with the passenger side leading, winding up with the left side of the UTV on the ground. Plaintiff was seated on the passenger side of the UTV during the subject incident.

35.    Upon further information and belief, the UTV's tires, brakes and/or steering failed to work

Exhibit A to [1] Notice of Removal, 25cv100

properly.

36.    Upon further information and belief, Plaintiff's seatbelt did not properly engage, causing his body to elevate during the rollover exposing his right arm outside of the UTV.

37.    Upon further information and belief, Defendant IMMI is in the business of designing, engineering, developing, manufacturing, testing, furnishing, marketing, distributing and/or selling seatbelts and other component parts to companies like the Polaris Defendant to be used in their UTVs, particularly for the 2019 Polaris Ranger in question.

38.    The IMMI seat belt used in the Polaris Ranger UTV was defective as designed, manufactured, marketed, assembled and/or placed into the stream of commerce by Defendant IMMI, and was a producing cause of the occurrence and injuries made the basis of this suit.

39.    As a result of the seat belt not properly engaging, Plaintiff's right arm got caught between the UTV's top metal frame and the pavement on the street, crushing his dominant arm below the elbow.

40.    As a further result, Plaintiff's arm was subsequently amputated at University Medical Center in El Paso, Texas.

### III.    CAUSES OF ACTION

#### A.  STRICT PRODUCTS LIABILITY OF THE POLARIS DEFENDANTS

41.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

42.    Pleading, alternatively, upon information and belief, the Polaris Defendants designed, manufactured, marketed, assembled, fabricated, produced, constructed, and/or otherwise built the Polaris Ranger UTV and its component parts prior to its sale, and is therefore a manufacturer of the subject UTV.

43.    The Polaris Ranger UTV was in an unreasonably dangerous condition as designed,

Exhibit A to [1] Notice of Removal, 25cv100

manufactured, marketed, assembled and/or placed into the stream of commerce by the Polaris Defendants, and was not reasonably fit for the purposes for which it was intended at the time of its design, manufacture, marketing, assembly, sale and/or distribution by the Polaris Defendants. Such dangerous conditions were a producing cause of the occurrence and injuries which are the basis of this lawsuit.

44. At the time the UTV was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that persons would use the vehicle in the manner and application in which it was being used at the time Plaintiff sustained his injuries.

45. The Polaris Ranger UTV was expected to and did reach Plaintiff without substantial change in the condition in which it was anticipated, sold and/or distributed by the Polaris Defendants. The Polaris Defendants issued no warning or instructions to potential users regarding such dangers, or in the alternative, any warnings issued were inadequate.

46. The Polaris Defendants are strictly liable in tort and Plaintiff hereby invokes the doctrine of strict liability. The Polaris Defendants designed, manufactured, assembled, fabricated, distributed, marketed, sold, and/or warranted the Polaris Ranger UTV in an unreasonably dangerous condition to its foreseeable users, which failed to withstand normal and foreseeable handling, turning, steering, accelerating, operating and/or braking, and failed to provide safe occupant protection from reasonably foreseeable dangers.

47. The Polaris Ranger UTV was unreasonably dangerous for its intended use and was defective as described herein with respect to its design defects including, but not limited to:

    a. A high center of gravity which causes the Polaris Ranger UTV to be prone to rollovers;
    b. Stiff, rigid suspension which increases the propensity of rollovers;
    c. Incorporating seat belts that do not engage properly;
    d. Incorporating side safety netting that does not keep occupants' limbs inside the UTV; and

Exhibit A to [1] Notice of Removal, 25cv100

e.     Other defects to be discovered in litigation.

48.     The above unreasonably dangerous and unsafe defects in the Polaris Ranger UTV were a cause of Plaintiff's injuries and damages which are more particularly described below.

49.     The Polaris Defendants' Polaris Ranger UTV had a marketing defect. The Polaris Defendants, in the course of its regular business, designed, engineered, manufactured, distributed, assembled, promoted, marketed, distributed, delivered, and/or sold the Polaris Ranger UTV without adequate instructions, manuals, and/or without warnings regarding the defects or unreasonably dangerous conditions set forth above.

50.     The Polaris Ranger UTV was unreasonably dangerous for its intended use and was defective as described herein with respect to its marketing defects through the Polaris Defendants' failure to adequately warn and instruct consumers and users of the vehicle of the risks associated with the use of the product including, but not limited to:

a.     The substantial risk of a severe rollovers due to a high center of gravity;
b.     The substantial risk of severe injury due to faulty seatbelts in the event of a rollover;
c.     The substantial risk of severe injury due to faulty side netting in the event of a rollover;
d.     Failure to issue notification to consumers of the Polaris Ranger UTV of its propensity for rollover incidents;
e.     Failure to issue notification to the consumers of the Polaris Ranger UTV of the increased likelihood of severe injury due to faulty seat belts;
f.     Failure to issue notification to the consumers of the Polaris Ranger UTV of the increased likelihood of severe injury due to the faulty side netting; and
g.     Other defects to be discovered in litigation.

51.     These dangers were known or by the application of reasonably developed human skill and foresight should have been known by the Polaris Defendants, which failures rendered the product unreasonably dangerous as marketed.

52.     The marketing defect was a cause of Plaintiff's injuries and damages.

53.     As a direct and proximate result of the above unreasonably dangerous defects in the Polaris

Page **10** of **22**

Exhibit A to [1] Notice of Removal, 25cv100

Ranger UTV, Plaintiff suffered severe injuries and damages, including the amputation of his dominant arm and hand which necessitated medical treatment in the past and will continue to require continued medical treatment in the future.

54.     As a direct and proximate result of the Polaris Ranger UTV's aforementioned defects, Plaintiff has experienced past and future significant mental and physical pain and suffering, permanent injury, medical care and will likely undergo future medical care, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, loss of earning capacity, disfigurement, impairment, pain and suffering, mental anguish, loss of enjoyment of life, and other damages.

55.     The Polaris Defendants acted in a manner which was willful, wanton or reckless, and demonstrated a culpable state such that punitive damages should be determined by a jury.

### B.  NEGLIGENCE OF THE POLARIS DEFENDANTS

56.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

57.     Pleading alternatively, and without waiving the foregoing, at all times relevant to the collision and injuries which are the basis of this Complaint, the Polaris Defendants are designers, marketers, manufacturers and/or sellers of UTVs, and were the designers, marketers, manufacturers, and/or sellers of the Polaris Ranger UTV involved in the subject collision.

58.     At all times relevant to the collision and injuries which are the basis of this Complaint, the Polaris Defendants owed a duty of reasonable care to assure the UTVs it designed, manufactured, marketed, and/or sold were properly equipped to assure the safe operation for its foreseeable users and to assure the safety of passengers, including Plaintiff.

59.     The Polaris Defendants owed Plaintiff a duty to use reasonable care in formulating, designing, manufacturing, inspecting, testing, marketing and/or selling the Polaris Ranger UTV.

Exhibit A to [1] Notice of Removal, 25cv100

60.    The Polaris Defendants had a duty to design, develop, manufacture, assemble, test, inspect, market, distribute and/or sell products that are reasonably safe and do not subject occupants to an unreasonable risk of harm.

61.    The Polaris Defendants knew or should have known that the Polaris Ranger UTV had a propensity to rollover, and had known seat belt failures, subjecting occupants, like Plaintiff, to injury.

62.    The Polaris Defendants breached their duty and were thereby negligent in designing, manufacturing, marketing, distributing, modifying, and/or selling the product in question. The Polaris Defendants were negligent in one or more of the following ways:

a.    Knowing its UTV is prone to rollovers, and failing to correct or warn of the dangers;

b.    Failing to use reasonable care in designing the Polaris Ranger UTV;

c.    Failing to use reasonable care in marketing and warning of the dangers of the product;

d.    Failing to use reasonable care in testing the product;

e.    Failing to use reasonable care in inspection of the product;

f.    Designing a product which was prone to rollover when used as intended;

g.    Designing a product which was prone to seat belt failure when used as intended;

h.    Failing to warn consumers and/or foreseeable operators of the propensity to rollover or lose control that rendered the Polaris Ranger UTV unreasonably dangerous;

i.    Misrepresenting that the Polaris Ranger UTV was safe for its intended use;

j.    Failing to recall the product;

k.    Knowing of prior incidents of persons injured through normal use of the Polaris Ranger UTV and failing to take any action to address the danger;

l.    Failing to advise potential buyers and users of the hazards involved in the operation of the Polaris Ranger UTV;

m.    Failing to provide instructions for use of the product to avoid a risk of injury caused by a lack of control or propensity to rollover;

n.    Failing to provide instructions for use of the product to avoid a risk of injury caused by seat belt failure;

o.    Failing to use reasonable care to incorporate safety equipment or devices to assure the product would operate safely;

p.    Incorporating faulty safety equipment such as defective seat belts and defective netting;

q.    Failing to keep reasonably informed and advised of available public and private reports, complaints, studies, statistics, and other information concerning the type, nature and frequency of injury while using the product and the number, nature and severity of injuries and resulting from the same;

Page **12** of **22**

Exhibit A to [1] Notice of Removal, 25cv100

r.    Failing to conduct a risk assessment to discover the problems of using the product before supplying it to the public;

s.    Failing to ensure the Polaris Ranger UTV was reasonably safe for foreseeable use; and

t.    Other negligence to be discovered throughout the course of litigation.

63.    One or more of the foregoing acts and omissions, whether taken singularly or in any combination, constituted negligence and was a proximate cause of Plaintiff's injuries and damages which are described below.

64.    As a direct and proximate result of the Polaris Defendants' negligence, Plaintiff suffered severe damages, including the amputation of his dominant arm and hand which necessitated medical treatment in the past and will continue to require continued medical treatment in the future. Plaintiff has experienced past and future significant mental and physical pain and suffering, permanent injury, medical care and will likely undergo future medical care, and has suffered economic and non-economic loss, including, but not limited to, obligations for medical services and expenses, loss of earning capacity, disfigurement, impairment, pain and suffering, mental anguish, loss of enjoyment of life, and other damages.

65.    The Polaris Defendants acted in a manner which was willful, wanton or reckless, and demonstrated a culpable state such that punitive damages should be determined by a jury.

C.    STRICT PRODUCTS LIABILITY OF DEFENDANT POWER CENTER

66.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

67.    Pleading alternatively, upon information and belief, Defendant Power Center was at all material times engaged in the business of selling, marketing, distributing or otherwise placing the subject Polaris UTV into the stream of commerce. The subject UTV was in an unreasonably dangerous condition at the time of sale and purchase by Defendant Power Center. Defendant Power Center is therefore liable under the doctrine of strict product liability for the injuries produced by

Exhibit A to [1] Notice of Removal, 25cv100

the design, manufacturing, and/or marketing defects in the subject UTV as alleged above.

68.    There was a design defect in the subject UTV at the time it was sold, marketed, distributed, and/or otherwise placed into the stream of commerce by Defendant Power Center which caused the injuries and damages suffered by Plaintiff in this case. The subject UTV was unreasonably dangerous and defective as designed, manufactured, and/or marketed taking into consideration the utility of the UTV and the risks involved in its use.

69.    Defendant Power Center acted in a manner which was willful, wanton or reckless, and demonstrated a culpable state such that punitive damages should be determined by a jury.

### D. NEGLIGENCE OF DEFENDANT POWER CENTER

70.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

71.    Pleading alternatively and without waiving the forgoing, at all times material hereto Defendant Power Center owed to Plaintiff, the duty to exercise reasonable care in selling, marketing, distributing, inspecting, investigating, testing, servicing, repairing, and/or otherwise placing into the stream of commerce utility terrain vehicles, including the subject UTV as described above.

72.    Defendant Power Center owed a duty to Plaintiff, as a foreseeable user of its UTV, to sell, market, distribute, inspect, test, service, and/or repair UTVs without hidden or concealed defects, and to put into the stream of commerce UTVs which are safe for use by the public.

73.    Defendant Power Center breached these duties by failing to use reasonable care in the selling, marketing, distributing, inspecting, investigating, testing, repairing, servicing, and/or otherwise placing into the stream of commerce the subject UTV and/or its component parts, thereby creating an unsafe and unreasonably dangerous product. The product was unsafe and dangerous to an extent beyond that which would be contemplated by the ordinary user of the

Exhibit A to [1] Notice of Removal, 25cv100

product with the ordinary knowledge common to the community as to the product's characteristics.

74.     Defendant Power Center's breach of these duties was a cause of the injuries and damages suffered by Plaintiff in this case.

### E. BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY BY THE POLARIS DEFENDANTS AND DEFENDANT POWER CENTER

75.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

76.     Pleading alternatively and without waiving the foregoing, Plaintiff alleges a breach of the implied warranty of merchantability against the Polaris Defendants and Defendant Power Center.

77.     The Polaris Defendants and Defendant Power Center regularly deal in the selling, marketing, distributing, inspecting, investigating, testing, repairing, servicing, and/or otherwise placing into the stream of commerce UTVs and/or its component parts, including the subject UTV, and thereby warranted that the subject UTV was merchantable pursuant to NMSA § 55-2-314.

78.     The Polaris Defendants and Defendant Power Center breached their implied warranty of merchantability by selling the subject UTV despite it being defective and unfit for the ordinary purpose for which it was used.

79.     The Polaris Defendants and Defendant Power Center's breach of warranty rendered the subject UTV unreasonably dangerous to an extent beyond which would be reasonably contemplated by an ordinary consumer.

80.     The Polaris Defendants and Defendant Power Center's breach of warranty was a cause of the injuries and damages suffered by Plaintiff in this case.

### F. BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE BY THE POLARIS DEFENDANTS AND DEFENDANT POWER CENTER

81.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

82.     Pleading alternatively and without waiving the foregoing, Plaintiff alleges a breach of the

Exhibit A to [1] Notice of Removal, 25cv100

implied warranty of fitness for a particular purpose against the Polaris Defendants and Defendant Power Center.

83.    At the time the Polaris Defendants and Defendant Power Center either sold the subject UTV or placed it into the stream of commerce, they had reason to know the particular purpose for which UTVs were used and Plaintiff relied on the Polaris Defendants and Defendant Power Center's skill or judgment to select or furnish suitable and safe goods and products, including the subject UTV.

84.    The Polaris Defendants and Defendant Power Center therefore gave an implied warranty that the UTV was fit for such purposes pursuant to NMSA § 55-2-315.

85.    The Polaris Defendants and Defendant Power Center's breach of warranty was a cause of the injuries and damages suffered by Plaintiff in this case.

### G. NEGLIGENCE OF DEFENDANT LOGSTON

86.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

87.    Upon information and belief, at all times relevant to the collision and injuries which are the basis of this Complaint, Defendant Logston performed service, maintenance, and/or repairs on the subject UTV which was involved in the subject collision.

88.    Defendant Logston owed a duty to use reasonable care in repairing, inspecting, servicing, and/or maintaining the subject UTV and making known any dangers that the owner or foreseeable users of the UTV should be aware of.

89.    Specializing in inspecting, servicing, repairing, and/or maintaining off-road vehicles, including the subject UTV, Defendant Logston knew or should have known that the Polaris Ranger UTV was not safe for its intended use, including faulty tires, brakes and/or steering, and that it had faulty seat belts and side netting, subjecting occupants to injury.

Exhibit A to [1] Notice of Removal, 25cv100

90.    Defendant Logston breached its duty when it inspected, serviced, repaired, and/or maintained the subject UTV.

91.    The acts and/or omissions of Defendant Logston, whether taken singularly or in any combination, constituted negligence and was a proximate cause of Plaintiff's injuries and damages which are more particularly alleged below.

92.    Defendant Logston acted in a manner which was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

### H. STRICT PRODUCTS LIABILITY OF DEFENDANT IMMI

93.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

94.    Upon information and belief, Defendant IMMI designed, manufactured, marketed, assembled, produced, constructed, and/or otherwise built the seat belt and its component parts used in the subject 2019 Polaris Ranger UTV, and is therefore a manufacturer of the seat belt at issue.

95.    The IMMI seat belt was in an unreasonably dangerous condition as designed, manufactured, marketed, assembled and/or placed into the stream of commerce by Defendant IMMI, was not reasonably fit for the purposes for which it was intended at the time of its design, manufacture, marketing, assembly, sale and/or distribution by Defendant IMMI, and was a producing cause of the occurrence and injuries which are the basis of this lawsuit.

96.    At the time the IMMI seat belt was placed into the stream of commerce by Defendant IMMI, it was, or should have been, reasonably expected and foreseeable that persons would use the seat belt in the manner and application in which it was being used at the time Plaintiff sustained his injuries.

97.    The IMMI seat belt was expected to and did reach Plaintiff without substantial change in the condition in which it was anticipated, sold and/or distributed by Defendant IMMI. Defendant

Exhibit A to [1] Notice of Removal, 25cv100

IMMI issued no warning or instructions to potential users regarding such dangers, or in the alternative, any warnings issued were inadequate.

98.    Defendant IMMI is strictly liable in tort and Plaintiff hereby invokes the doctrine of strict liability. Defendant IMMI designed, manufactured, assembled, fabricated, distributed, marketed, sold, and/or warranted the IMMI seat belt in an unreasonably dangerous condition to its foreseeable users, and which seat belt failed to withstand normal and foreseeable use such as providing occupant protection from reasonably foreseeable dangers. The IMMI seat belt was unreasonably dangerous for its intended use and was defective as described herein with respect to its design defects including but not limited to:

    a.    Designing a seat belt where the emergency locking retractor does not engage;
    b.    Designing seat belts where the cup sensor fails to lock;
    c.    Designing seat belts with defective webbing sensors;
    d.    Improperly calibrating webbing sensors which prevented the seat belt from locking;
    e.    Failure to test its seat belt under conditions expected by the end user; and
    f.    Other defects to be discovered in litigation.

99.    The above design defects in the IMMI seat belt were a cause of Plaintiff's injuries and damages which are more particularly described below.

100.    Defendant IMMI had a defect in the marketing of the seat belt used in the Polaris Ranger UTV. Defendant IMMI, in the course of its regular business, designed, engineered, manufactured, distributed, assembled, promoted, marketed, distributed, delivered and/or sold the IMMI seat belt used on the subject Polaris Ranger UTV without adequate instruction and/or without warnings regarding the defects or unreasonably dangerous conditions that its product poses.

101.    The IMMI seat belt was unreasonably dangerous for its intended use and was defective as described herein with respect to its marketing defects through its failure to adequately warn and instruct consumers and users of the seat belt of the risks associated with the use of the product including, but not limited to:

Exhibit A to [1] Notice of Removal, 25cv100

a.  The substantial risk of its seat belt not engaging during a rollover;
b.  Failure to issue notification to consumers of the Polaris Ranger UTV of the increased likelihood of severe injury due to its defective seat belt;
c.  Marketing its product as safe and functional when it was not; and
d.  Other defects to be discovered in litigation.

102. These dangers were known or by the application of reasonably developed human skill and foresight should have been known by Defendant IMMI, which rendered the product unreasonably dangerous as marketed.

103. The marketing defect was a cause of Plaintiff's injuries and damages.

104. As a direct and proximate result of the IMMI seat belt's aforementioned design, manufacturing and marketing defects, Plaintiff has experienced past and future significant mental and physical pain and suffering, permanent injury, medical care and will likely undergo future medical care, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, loss of earning capacity, disfigurement, impairment, pain and suffering, mental anguish, loss of enjoyment of life, and other damages.

105. Defendant IMMI acted in a manner which was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

### I. NEGLIGENCE OF DEFENDANT IMMI

106. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

107. Pleading alternatively, and without waiving the foregoing, at all times relevant to the collision and injuries which are the basis of this Complaint, Defendant IMMI was a designer, manufacturer, marketer, and/or seller of seat belts, and was the designer, manufacturer, marketer, and/or seller of the seat belt used in the subject 2019 Polaris Ranger UTV which was involved in the subject collision.

108. At all times relevant to the collisions and injuries which are the basis of this Complaint,

Exhibit A to [1] Notice of Removal, 25cv100

Defendant IMMI owed a duty of reasonable care to assure the seat belts it designed, manufactured, marketed, and/or sold were properly equipped to assure the safety of foreseeable riders of Polaris UTVs, including Plaintiff.

109.    Defendant IMMI owed Plaintiff a duty to use reasonable care in formulating, designing, manufacturing, inspecting, testing, marketing and selling its seat belts for use on Polaris Ranger UTVs.

110.    Defendant IMMI had to a duty to design, develop, manufacture, assemble, test, inspect, market, distribute and/or sell products that are reasonably safe and do not subject occupants to an unreasonable risk of harm.

111.    Defendant IMMI knew or should have known that the seat belts it manufactured for Polaris Ranger UTVs had a propensity to fail during rollovers, subjecting occupants, like Plaintiff, to injury.

112.    Defendant IMMI breached its duty and was thereby negligent in designing, manufacturing, marketing, distributing and/or selling the seat belt in question. Defendant IMMI was negligent in one or more of the following ways:

    a.    Failing to use reasonable care in designing its seat belts;
    b.    Failing to use reasonable care in marketing and warning of the dangers of its faulty seat belts;
    c.    Failure to use reasonable care in inspection of the product;
    d.    Failure to use reasonable care in conducting safety simulations with its product;
    e.    Failure to use reasonable care in properly testing its product;
    f.    Designing a product that was prone to failure during rollovers;
    g.    Failure to warn users of the dangers when using its product;
    h.    Failure to warn consumers and/or foreseeable operators of the risk of its seat belt failure during rollovers, rendering its product unreasonably dangerous;
    i.    Misrepresenting its seat belts as safe for its intended use;
    j.    Failing to recall the product;
    k.    Knowing of prior incidents of persons injured through normal use of its seat belts and failing to take any action to address the dangers and known hazards;
    l.    Failing to advise potential buyers and users of the hazards involved in using its seat belts;

Exhibit A to [1] Notice of Removal, 25cv100

    m.    Failure to use reasonable care to incorporate adequate safety equipment in its product to assure it functioned properly;

    n.    Failing to keep reasonably informed and advised of available public and private reports, complaints, studies, statistics, and other information concerning the type, nature and frequency of injury while using the product and the number, nature and severity of injuries and resulting from the same;

    o.    Failing to conduct a risk assessment to discover the problems of using the product before supplying it to the public; and

    p.    Other acts of negligence to be discovered during the course of litigation.

113.    One or more of the foregoing acts and omissions, whether taken singularly or in any combination, constituted negligence and was a proximate cause of Plaintiff's injuries and damages which are described below.

114.    Defendant IMMI acted in a manner which was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

## IV.   DAMAGES

115.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint.

116.    As a direct and proximate result of the acts and omissions of Defendants as set forth in this Complaint and as will be identified in discovery, Plaintiff suffered severe bodily injuries and amputation, and has recoverable damages, including but not limited to:

    a)  Past and future medical care reasonably and necessarily incurred or to be incurred for the care and treatment of the injuries sustained;

    b)  Past and future lost income and loss of wage earning capacity;

    c)  Past and future loss of household services;

    d)  Past and future impairment and disability;

    e)  Past and future disfigurement;

    f)  Past and future pain and suffering;

    g)  Past and future mental pain and anguish;

    h)  Past and future emotional distress;

    i)  Hedonic damages;

    j)  Punitive damages;

    k)  Recoverable court costs;

    l)  Pre and post-judgment interest to the maximum extent permitted by law; and

    m)  Such other and further relief as Plaintiff may show himself to be justly entitled under New Mexico Law.

Exhibit A to [1] Notice of Removal, 25cv100

## V.    JURY DEMAND

117.    Plaintiff respectfully requests a trial by jury on these issues in this case.

## VI.    CONCLUSION

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer, and prays that upon final trial, Plaintiff have judgment against Defendants for all relief requested, including pre-judgment interest, post-judgment interest, costs of this suit, compensatory damages, punitive damages, and for such other and further relief as Plaintiff may show himself to be justly entitled to under New Mexico law.

Respectfully submitted,

**MENDEZ ISAAC JOUDI, PLLC**
Attorneys for Plaintiff
320 Texas Ave., Suite 300
El Paso, Texas 79901
Tel.: (915) 444-1000
JIsaac@mijlawfirm.com

/s/ *Joseph G. Isaac*
**JOSEPH G. ISAAC**
NM State Bar No. 121541

Page **22** of **22**